# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-80995-RAR

**RIPKURRENT LLC**,

      Plaintiff,

v.

**RICHARD BALLARD IRA LLC,** *et al.*,

      Defendants.

_____/

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 14] ("Motion"), filed on August 13, 2020. Plaintiff filed a Response to the Motion to Dismiss on September 3, 2020 [ECF No. 18] ("Response"). Defendants then filed a Reply on September 14, 2020 [ECF No. 24] ("Reply"). The Court held a hearing on the Motion on September 16, 2020. *See* Paperless Minute Entry [ECF No. 25] ("Hearing").

At the Hearing, the parties agreed that the Court should defer ruling on the Motion to allow the parties an opportunity to attempt to resolve this case in a settlement conference before Magistrate Judge Bruce E. Reinhart. The settlement conference, which took place on October 13, resulted in an impasse. *See* Paperless Minute Entry [ECF No. 28]. With leave from the Court, Plaintiff subsequently filed a Surreply on October 27, 2020 [ECF No. 31] ("Surreply"). Having reviewed the parties' written submissions, the applicable law, and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion [ECF No. 14] is **DENIED** for the reasons set forth herein.

## **BACKGROUND**

Plaintiff ripKurrent LLC ("ripKurrent") is a Florida limited liability company with its principal place of business in Boca Raton, Florida. *See* Compl. [ECF No. 1] ¶ 1. Defendant Richard Ballard IRA LLC ("Ballard IRA") is a Georgia limited liability company with its principal place of business in Alpharetta, Georgia. *See id.* ¶ 2. Ballard IRA "is a consulting service with subject matter experience in sports, entertainment, hospitality and retail industries for business development of products and services in these channels of business." *See* Mot. at 3. Defendant Richard W. Ballard is Ballard IRA's sole managing member and resides in Georgia. *See* Compl. ¶ 2.

On November 9, 2017, ripKurrent and Ballard IRA entered into an agreement whereby Ballard IRA "would provide consulting services to assist ripKurrent in obtaining, presenting, and soliciting sports, entertainment, hospitality, retail projects and project agreements for ripKurrent in Boca Raton, Florida." *See* Compl. ¶ 9; Consulting Agreement [ECF No. 1-1] ¶ 1.A. According to the Complaint, the "central basis" for the Consulting Agreement was the "Rockdome Project." Compl. ¶ 6. Specifically, Ballard IRA agreed to facilitate ripKurrent becoming the primary contractor for products, solutions, and services sold at Rockdome, an entertainment-oriented development site in Las Vegas, Nevada. *See id.* ¶ 12; Mot. at 5. In exchange for Ballard IRA's services, ripKurrent made an initial advance payment of $250,000. *See* Compl. ¶ 12.

The parties' business relationship subsequently disintegrated when Ballard IRA allegedly failed to uphold its end of the bargain with respect to both the Rockdome Project and the other projects it was supposed to obtain for ripKurrent. *See id.* ¶¶ 14-16. Thus, on February 20, 2019, ripKurrent terminated the Consulting Agreement. *See id.* ¶ 17. Ballard IRA repaid $15,000 of the $250,000 advance payment. *See id.* ¶ 18. ripKurrent contends that it is entitled to repayment of the remaining $235,000 pursuant to the Consulting Agreement. *Id.*

On June 24, 2020, ripKurrent filed this action pleading breach of contract and unjust enrichment claims against both Defendants, as well as fraudulent inducement and negligent misrepresentation claims against Mr. Ballard individually. *See id.* at 4-8. The Complaint also alleges that Mr. Ballard is Ballard IRA's alter ego and that the Court should therefore pierce the corporate veil. *See id.* at 8-9.[1] The Complaint asserts that the Court has personal jurisdiction over Defendants under section 48.193(1)(a) of the Florida Statutes, because Defendants: "(1) breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida; (2) caused injury to ripKurrent in Florida while engaged in solicitation or service activities within Florida; and (3) committed a tortious act (fraud) within Florida." *Id.* ¶ 4.

In the instant Motion, Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(2) on the grounds that the Court lacks personal jurisdiction over them. *See* Mot. at 2. Defendants state that neither Ballard IRA nor Mr. Ballard:

> (1) is, or has even been, registered to do business in Florida; (2) maintains, or has ever maintained, a registered agent for service of process in Florida; (3) has, or has ever had, any offices or employees in Florida; (4) owns, or has even owned, any real or commercial property in [] Florida; (5) leases, or has ever leased, any real or commercial property in Florida; (6) has ever paid taxes in Florida; (7) holds any financial or bank accounts in Florida; (8) has an address in Florida; (9) maintains an email address in Florida; (10) maintains a telephone number in Florida; (11) advertises for services in Florida; or (12) is regulated by any entity in Florida.

*Id.* Defendants contend that these facts—coupled with the Georgia choice-of-law provision in the Consulting Agreement and the fact that Plaintiff sent two demand letters to Defendants from

---

[1] Although Defendants did not raise this issue in their Motion, the Court notes that alter ego is not a separate cause of action for which relief may be granted. *See Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014). Rather, it serves as a theory to impose liability on an individual for the acts of a corporate entity, and therefore should be alleged in the body of the complaint—not as a separate count. *Id.*

Georgia-based attorneys prior to filing suit—demonstrate that there is no constitutional basis for the Court to exercise jurisdiction over Defendants. *See id.* at 2-3.

Defendants acknowledge that Mr. Ballard traveled to Florida four times to meet with ripKurrent individuals.  First, in October 2017, before the parties signed the Consulting Agreement, Mr. Ballard traveled to Florida to have an introductory lunch with Justin Dye of ripKurrent at the Boca Raton Resort Hotel and Yacht Club. *See id.* at 4.  Second, in March 2018, Mr. Ballard met with several ripKurrent individuals and representatives of a Colombia-based company at ripKurrent's headquarters in Florida. *See id.* at 5, n.2.  Defendants maintain that "[t]here was no discussion of the [Consulting] Agreement or the [ripKurrent-Ballard IRA] relationship at this meeting." *Id.*  Third, in June 2018, Mr. Ballard traveled to Miami to introduce ripKurrent executives to the CEO of a Canada-based company. *See id.*  Lastly, in July 2018, Mr. Ballard had a lunch meeting with Mr. Dye in Florida to discuss a potential resolution of the parties' dispute over Defendants' repayment of the advance paid by ripKurrent. *See id.* at 5.

Defendants insist, however, that only two of these meetings were "during the course of the ripKurrent–[Ballard IRA] relationship" and "relating to the parties' Agreement." *Id.* at 5.  They argue that, in contrast, "one or more representatives of ripKurrent have traveled to the State of Georgia at least four times in the last two years during the course of the parties' relationship, the last of which was less than one year ago." *Id.*  Mr. Ballard's declaration states that ripKurrent reached out to Mr. Ballard to initiate the business relationship, not the other way around. *See* Ballard Decl. [ECF No. 14-1] ¶ 37.

In response to the Motion and Mr. Ballard's declaration, Plaintiff submitted a declaration from ripKurrent's CEO and sole managing member, Mr. Dye. *See* Dye Decl. [ECF No. 19].  Mr. Dye states that he was introduced to Mr. Ballard through ripKurrent's co-founder and President, Jade Culbertson. *Id.* ¶ 7.  He indicates that Mr. Culbertson was approached by a "commercial

leader at Panasonic," Mr. Ballard's former employer, who "had close ties" to Mr. Ballard and "lobbied ripKurrent to contract with" Mr. Ballard on the Rockdome Project.  *Id.*  Over the course of Ballard IRA's relationship with ripKurrent, Mr. Dye and Mr. Ballard exchanged numerous phone calls, text messages, and emails while Mr. Dye was in Boca Raton, Florida.  *See id.* ¶¶ 8, 14, 16, 20.  Mr. Dye states that when he emailed Mr. Ballard to set up the October 2017 meeting in Florida, Mr. Ballard responded "that October 23 in Boca Raton, Florida worked for him 'as [Mr. Ballard's] schedule already has [him] in Orlando Monday/Tuesday' because Mr. Ballard would 'be in Orlando for dinner with a client and meeting Tuesday.'"  *Id.* ¶ 9.  Mr. Ballard expressed a willingness to meet in person "to ensure we align on a mutual foundation personally to ensure a successful and long term relationship."  *Id.*

Mr. Dye also quotes a provision in the Consulting Agreement stating that ripKurrent engaged Ballard IRA to render consulting services "for ripKurrent in Boca Raton, Florida" and asserts that "[a]ny benefit to ripKurrent from the Consulting Agreement would occur in Boca Raton, Florida."  *Id.* ¶ 16.  Additionally, he lists the three business meetings he had with Mr. Ballard in Florida while the Consulting Agreement was in place.  *See id.* ¶ 21.

## **LEGAL STANDARD**

To determine whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *AcryliCon USA, LLC v. Silikal GmbH*, 985 F. 3d 1350, 1363–1364 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010)).

When a defendant files a Rule 12(b)(2) motion to dismiss challenging personal jurisdiction, "the district court must hear and decide the issue 'before trial unless the court orders a deferral

until trial.'"  *Id.* at 1364 (quoting Fed. R. Civ. P. 12(i)).  Rule 12(i) affords the district court discretion on how to proceed at this stage—and although the plaintiff bears the burden of establishing personal jurisdiction, "the plaintiff's burden of proof varies according to how the district court chooses to proceed."  *Id.*  Regardless of how the district court proceeds, the plaintiff must eventually establish personal jurisdiction by a preponderance of the evidence.  *Id.*

"The district court can impose the preponderance-of-the-evidence standard right away, during the pre-trial phase, by conducting an evidentiary hearing."  *Id.*  "If it holds a hearing, the court adjudicates the issue of whether the court has jurisdiction over the defendant's person by determining the credibility of the witness testimony, weighing the evidence, and finding the relevant jurisdictional facts."  *Id.* (quoting *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010)) (internal quotation marks and alterations omitted).  "Because the court is making factual determinations and reaching a final decision on jurisdiction, a preponderance-of-the-evidence standard applies."  *Id.* (citations omitted).

Alternatively, the district court can wait until trial to impose a preponderance-of-the-evidence standard.  *Id.*  If the court follows this course, it reviews the motion to dismiss under a prima facie standard and decides the motion based solely on the complaint and affidavits.  *Id.*  The plaintiff bears the initial burden of alleging sufficient facts in the complaint to make out a prima facie case of jurisdiction.  *See Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020) (internal quotation omitted).  A prima facie case consists of enough evidence to withstand a motion for a directed verdict.  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

If the plaintiff alleges sufficient facts to make out a prima facie case of jurisdiction, the burden shifts to the defendant to make a prima facie showing that the court lacks personal jurisdiction.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.

2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).  If the defendant raises a meritorious challenge to personal jurisdiction through affidavits, documents, or testimony, the burden then shifts back to the plaintiff to produce evidence supporting jurisdiction.  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996); *Diulus*, 823 F. App'x at 848.  "[W]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  *Id.* (internal quotation omitted); *see also Virgin Health Corp. v. Virgin Enterprises Ltd.*, No. 08-22557-CIV, 2009 WL 10668149, at *2 (S.D. Fla. Feb. 12, 2009), aff'd, 393 F. App'x 623 (11th Cir. 2010).  "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."  *PVC Windoors*, 598 F.3d at 810.

## ANALYSIS

Florida's long-arm statute, section 48.193, provides two ways in which a defendant may be subject to the jurisdiction of Florida courts:

> First, a defendant is subject to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—for conduct specifically enumerated in the statute . . . Second, a defendant is subject to general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (internal citations and quotations omitted).  As discussed above, "[w]hether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process."  *Id.*  At the Hearing, Plaintiff confirmed that it is not asserting a theory of general personal jurisdiction.  The Court therefore focuses its analysis solely on whether specific personal jurisdiction exists over each Defendant.

### I.  Whether the Court has specific personal jurisdiction over Ballard IRA

#### a.  *Long-Arm Statute*

Under the first step of the personal jurisdiction inquiry, the Court must determine whether Ballard IRA's activities meet any of the enumerated acts listed in section 48.193(1) of the Florida Statutes.  Plaintiff alleges that personal jurisdiction over Ballard IRA is authorized by: (i) section 48.193(1)(a)(7) because Ballard IRA breached a contract in Florida by failing to perform acts required by the Consulting Agreement to be performed in Florida; and (ii) section 48.193(1)(a)(1) because Ballard IRA conducted business in Florida.  *See* Resp. at 5-6; Compl. ¶ 4.  "Florida's long-arm statute is to be strictly construed," *Sculptchair*, 94 F.3d at 627, and because state law governs the long-arm statute, a federal court is required to construe the statute as would the Florida Supreme Court.  *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

Here, section 48.193(1)(a)(7) provides a basis for personal jurisdiction.  It permits the Court to exercise jurisdiction over a person who "breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state."  Fla. Stat. § 48.193(1)(a)(7).  Mere existence of a contractual relationship between a non-resident defendant and a Florida resident is insufficient to satisfy this section of the statute.  *Thomsen v. Arts*, No. 4:11-CV-10070, 2012 WL 13014713, at *4 (S.D. Fla. May 24, 2012).  Rather, the contract itself must require performance in Florida.  *Id.*

Plaintiff's Complaint alleges that "the Consulting Agreement . . . required Ballard to perform consulting services for ripKurrent in Boca Raton, Florida."  Compl. ¶ 5; *see also* Resp. at 7.  The "Engagement" section of the Consulting Agreement states:

> ripKurrent hereby engages Ballard to render, as an independent contractor, consulting services on a non-exclusive basis to assist it in obtaining and presenting, solicit and obtain sports, entertainment, hospitality and retail projects and project agreements for ripKurrent *in Boca Raton, Florida*, as well as such additional or further scope

of consulting services as may be agreed to in writing by ripKurrent
and Ballard from time to time.

*See* Consulting Agreement ¶ 1.A (emphasis added).   The Complaint also alleges that Ballard IRA

breached the contract by, among other things, "failing to obtain any sports, entertainment,

hospitality or retail projects for ripKurrent."   Compl. ¶ 23.   These allegations are sufficient to

establish a prima facie case for personal jurisdiction under section 48.193(1)(a)(7).

At the Hearing, Defendants' counsel noted that the "in Boca Raton, Florida" phrase in the

Consulting Agreement refers to the location of Plaintiff's operations—not where Ballard IRA was

required to perform services under the contract.   However, this argument was not raised in

Defendants' briefs or affidavits.   Indeed, Defendants' Motion does not contest the applicability of

section 48.193(1)(a)(7) with respect to Ballard IRA, but rather focuses solely on whether the

Court's exercise of personal jurisdiction would violate due process.   *See generally* Mot.

Further, to the extent the "in Boca Raton, Florida" phrase in the Engagement section of the

Consulting Agreement is susceptible to differing interpretations, the Court will likely need to

examine extrinsic evidence regarding this contractual provision—and the parties have proffered

none at this stage.   *See Stewart v. KHD Deutz of Am., Corp.*, 980 F.2d 698, 702 (11th Cir. 1993)

("Once it is established that the contract is ambiguous . . . extrinsic evidence is admissible to

explain that ambiguity.").   For purposes of this Motion, the Court "must accept the allegations in

the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and

depositions, and must construe all reasonable inferences in favor of the Plaintiff."   *Consol. Dev.*

*Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *see also Jackam v. Hosp. Corp. of*

*Am. Mideast*, 800 F.2d 1577, 1582 (11th Cir. 1986) ("As with allegations of a complaint

concerning sufficiency of a claim, [plaintiffs] should be entitled to allege facts to support a

reasonable inference of jurisdiction within the state and an opportunity for discovery.").

The Court therefore finds that Plaintiff has established a prima facie case for personal jurisdiction under section 48.193(1)(a)(7) by alleging that Ballard was required to perform consulting services for Plaintiff in Boca Raton, Florida under the Consulting Agreement.

Additionally, although not raised in Plaintiff's briefing, the Complaint's allegation that Ballard IRA failed to repay Plaintiff the $235,000 plus interest it owed pursuant to Section 8.3 of the Consulting Agreement provides another basis for jurisdiction under section 48.193(1)(a)(7). *See* Compl. ¶¶ 18-19.  "Failure to make payments owed under a contract 'where payment is due to be made in Florida is sufficient to satisfy' Section (1)(a)(7) of Florida's long-arm statute." *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1238 (M.D. Fla. 2019) (quoting *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. 4th DCA 2003)). "Where a contract does not specify the place of payment, Florida courts have consistently held that it is presumed to be the payee's place of business." *Sendtec, Inc. v. Cosmetique, Inc.*, No. 807CV1643T24TGW, 2008 WL 660297, at *3 (M.D. Fla. Mar. 6, 2008) (citations omitted); *W. Town Plaza Assocs., Ltd. v. Citi Trends, Inc.*, No. 18-22150-CIV, 2018 WL 8619995, at *4 (S.D. Fla. Sept. 12, 2018) ("[T]here is a presumption that a contractual debt is to be paid at the creditor/payee's place of business, and that this presumption is sufficient to satisfy . . . the Florida long-arm statute for purposes of a personal jurisdiction analysis.") (quoting *Westerburger v. Bareño*, No. 16-cv-62154, 2016 WL 10587715, at *2 (S.D. Fla. Dec. 13, 2016)).

Accordingly, the Court presumes that the repayment Ballard IRA allegedly owes Plaintiff under Section 8.3 of the Consulting Agreement was due to be made in Florida—thus bringing Ballard IRA within the ambit of section 48.193(1)(a)(7).  And given that the Court finds multiple bases for exercising personal jurisdiction over Ballard IRA under section 48.193(1)(a)(7), it need not reach Plaintiff's alternative ground for exercising jurisdiction pursuant to section 48.193(1)(a)(1).

### b. Due Process

Having concluded that the reach of Florida's long-arm statute extends to Ballard IRA pursuant to section 48.193(1)(a)(7), the Court must next engage in a two-part inquiry to determine whether that reach comports with due process. *Sculptchair*, 94 F.3d at 627. First, the Court must determine whether Ballard IRA has established sufficient "minimum contacts" with the state of Florida. *Id.* Second, the Court must determine whether the exercise of jurisdiction over Ballard IRA would offend "traditional notions of fair play and substantial justice." *Id.* at 630-31 (citation omitted).

### i. Minimum Contacts

To establish minimum contacts, three criteria must be met:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that [it] should reasonably anticipate being haled into court there.

*Sculptchair*, 94 F.3d at 631 (citing *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994)). "[W]hen inspecting a contractual relationship for minimum contacts, we follow a 'highly realistic approach' that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." *Diamond Crystal Brands*, 593 F.3d at 1268 (citation omitted). "The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." *Id.* This focus protects a defendant from being subjected to jurisdiction based solely on "random fortuitous, or attenuated contacts." *Id.* (citation and quotation omitted).

With respect to whether Ballard IRA engaged in minimum suit-related contacts with Florida, this is a close case.  On the one hand, ripKurrent is the party that initiated contact with Ballard IRA; the parties' contract focuses primarily on the Rockdome Project in Las Vegas; and the contract has a Georgia choice-of-law provision.  *See* Ballard Decl. ¶ 37; Compl. ¶ 6; Consulting Agreement ¶ 19.  These factors weigh against a finding of minimum contacts.  *See Diamond Crystal Brands*, 593 F.3d at 1268 (stating that whether the defendant initiated the contractual relationship is one of the "plus" factors considered to determine if there are minimum contacts); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (indicating that a choice-of-law provision, although not dispositive, is relevant to the personal jurisdiction due process analysis).

On the other hand, Ballard IRA's contacts with Florida were more extensive than merely contracting with a Florida resident and failing to pay money in the forum, which would be insufficient to confer personal jurisdiction.  *See Angiamo Marine, Ltd. v. Ocean Marine, LLC.*, No. 18-CV-60401-WPD, 2018 WL 6514946, at *4 (S.D. Fla. Nov. 9, 2018).  The Consulting Agreement was not a one-shot operation or boilerplate contract—it contemplated a business relationship of at least four years between Ballard IRA and ripKurrent, governed by terms negotiated by the parties.  *See* Consulting Agreement ¶ 2.  By entering into this multi-year agreement with ripKurrent, Ballard IRA "created continuing obligations with residents of the forum," which is a significant factor in favor of specific personal jurisdiction.  *Diamond Crystal Brands*, 593 F.3d at 1268; *Burger King*, 471 U.S. at 475-76.

Further, although ripKurrent initiated contact with Mr. Ballard, Mr. Ballard traveled to Florida in October 2017 to develop Ballard IRA's business relationship with ripKurrent.  *See* Dye Decl. ¶¶ 11-12.  In advance of that meeting, Mr. Ballard sent Mr. Dye an email expressing his willingness to travel to Florida to meet with Mr. Dye in person "to ensure we align on a mutual foundation personally to ensure a successful and long term relationship." *Id.* ¶ 9.  Additionally,

the Consulting Agreement indicates that Ballard IRA was required to render consulting services "for ripKurrent in Boca Raton, Florida."  Consulting Agreement ¶ 1.  As mentioned above, while this phrase in the contract is somewhat ambiguous, Defendants have not rebutted Plaintiff's assertion that the contract required performance of consulting services in Florida.  And at this stage, the Court must construe the facts in the light most favorable to Plaintiff.

Moreover, the record shows that Ballard IRA indeed performed services for ripKurrent in Florida.  Excluding meetings aimed at resolving the dispute that led to this litigation, Mr. Ballard traveled to Florida on at least two occasions for business arising from the Consulting Agreement.  *See* Dye Decl. ¶ 21; *Burger King*, 471 U.S. at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there.").  Lastly, Mr. Dye's declaration indicates that while the Consulting Agreement was in force and he was in Florida, he and Mr. Ballard exchanged "approximately 20 or more phone calls, 20 or more text messages, and 20 or more email communications."  Dye Decl. ¶ 20.

Considered as a whole, Ballard IRA's suit-related contacts with Florida are sufficient to satisfy due process.  Specifically, Mr. Ballard (as Ballard IRA's representative): *(i)* created continuing obligations towards ripKurrent by entering into a four-plus-year negotiated Consulting Agreement, which contemplated performance of consulting services in Florida; *(ii)* traveled to Florida on several occasions to either develop the parties' business relationship or conduct business relating to the parties' Consulting Agreement (*e.g.*, introduce ripKurrent to potential partners); and *(iii)* frequently communicated with ripKurrent individuals in Florida by phone, email, and text messages.  These contacts are not merely "random," "fortuitous," or "attenuated" such that the exercise of personal jurisdiction over Ballard IRA would violate due process.[2]

---

[2] *See, e.g., Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1203 (N.D. Ala. 2012) ("Defendant purposefully availed himself of the privilege of conducting activities within the State of Alabama by:

Given these contacts, the Court finds that specific jurisdiction over Ballard IRA is proper even though the Consulting Agreement contains a Georgia choice-of-law provision. *See Sendtec*, 2008 WL 660297, at *5 ("While a choice of law provision can be a factor to be considered, [Defendant's] other contacts with Florida are sufficient to satisfy the minimum contacts requirement."); *W. Town Plaza Assocs.*, 2018 WL 8619995, at *7 ("In light of Defendant's extensive suit-related contacts with Florida, specific jurisdiction over Defendant is proper even though the [ ] Agreement contains an Alabama choice-of-law provision for property located in Alabama.").

### ii. *Traditional Notions of Fair Play and Substantial Justice*

Having determined that Plaintiff has established Ballard IRA had sufficient minimum contacts with Florida, the burden shifts to Ballard IRA to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks and citation omitted). In this analysis, the Court looks to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

---

performing consulting services for an Alabama company; receiving payment, in part, by funds drawn from an Alabama banking institution; frequently contacting [Plaintiff's] employees in Alabama by telephone, email, and facsimile to discuss the results of the tests he performed; requesting test samples and customer orders of [Plaintiff's] products from the Athens, Alabama office; discussing marketing strategies, customer information, and product formulations with [Plaintiff's] Alabama staff; and submitting his expense reports to [Plaintiff] in Alabama."); *Baker Electronics, Inc. v. Pentar Sys., Inc.*, 219 F. Supp. 2d 1260, 1264-65 (M.D. Fla. 2002) (finding sufficient minimum contacts with Florida where the defendant traveled to Florida to discuss a joint venture with the plaintiff, a Florida corporation; transmitted information to the plaintiff through electronic mail and facsimile; and communicated with the plaintiff on multiple occasions to promote the deal); *Petit-Bois v. A to Z Exp. of NH, Inc.*, No. 3:06CV261J32MCR, 2006 WL 1529549, at *6 (M.D. Fla. May 24, 2006) ("Florida courts have found the minimum contacts requirement satisfied when a non-resident has contracted with a Florida resident and the contract requires substantial performance in Florida."); *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1088 (S.D. Fla. 2020) (finding sufficient minimum contacts where foreign company that was a party to a Share Purchase Agreement was created for the purpose of obtaining Florida company's subsidiaries; directed more than 40 communications into Florida via skype, email, and telephone throughout the course of the parties' negotiations; and was required to make its payment in Florida under the agreement).

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Diamond Crystal Brands*, 593 F.3d at 1274 (quoting *Burger King*, 471 U.S. at 477) (internal quotation marks omitted).

Defendants argue that it would be a burden for Ballard IRA to defend this lawsuit in Florida because it "is a small company that does not regularly conduct business in Florida" and the COVID-19 pandemic has affected Ballard IRA financially.  Mot. at 7.  They further contend that Florida's interest in adjudicating this dispute is minimal because the Defendants are Georgia citizens who had minimal contacts with Florida and the Consulting Agreement has a Georgia choice-of-law provision.  *See id.* at 19-20.

These considerations do not present a sufficiently "compelling case" that the exercise of jurisdiction over Ballard IRA would violate traditional notions of fair play and substantial justice. Any burden of litigating a case in Florida for Ballard IRA is greatly reduced by modern methods of transportation and electronic communication and discovery.  *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259–60 (11th Cir. 1996) (finding that the burden occasioned by litigating in a different state for the Defendants, while not slight, was greatly reduced by modern methods of transportation); *3Q Techs., Ltd. v. Canfield Sci., Inc.*, No. CIV.A. 1:05CV2454-RL, 2006 WL 1455663, at *9 (N.D. Ga. May 16, 2006) ("The record indicates that [Defendant] has made several trips to Georgia in the past. While slightly more unpleasant, the court can find no reason why attending a legal proceeding in Atlanta, Georgia, would be more burdensome than visiting Atlanta for a business meeting . . . Also in the age of modern technology, with telephone conferences, electronic communications, etc., discovery matters and the eventual litigation of this suit in Georgia will not impose an undue burden on [Defendants].").

Perhaps Ballard IRA's best argument here is that the choice of law provision in the Consulting Agreement requires the breach-of-contract claim to be decided under Georgia law. However, "[t]he State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident," and "[t]he plaintiff . . . has a great interest in the convenience of litigating in [its] home state." *Robinson*, 74 F.3d at 259.  In this case, these interests are not outweighed by Ballard IRA's interest in having a Georgia court rule on Georgia contract law. *See, e.g., Sendtec*, 2008 WL 660297, at *6; *W. Town Plaza Assocs.*, 2018 WL 8619995, at *8. Thus, Ballard IRA has not shown that defending this suit in Florida "would be especially onerous, much less how any such inconvenience achieves a 'constitutional magnitude.'" *Diamond Crystal Brands*, 593 F.3d at 1274 (quoting *Burger King*, 471 U.S. at 484).

## II.   Whether the Court has specific personal jurisdiction over Mr. Ballard

### a.   Long-Arm Statute

Plaintiff argues that the reach of Florida's long-arm statute extends to Mr. Ballard because: (i) Mr. Ballard committed tortious acts (fraudulent inducement and negligent misrepresentation) in Florida, making jurisdiction appropriate under section 48.193(1)(a)(2) of the Florida Statutes; and (ii) Mr. Ballard is Ballard IRA's alter ego and therefore the sections of the long-arm statute that apply to Ballard IRA also apply to him. *See* Resp. at 5-13.

"Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida 'for any cause of action arising from . . . committing a tortious act within Florida.'" *Louis Vuitton*, 736 F.3d at 1353 (quoting Fla. Stat. § 48.193(1)(a)(2)) (alterations omitted).  The tortfeasor's physical presence in Florida is not required—in certain instances, jurisdiction may be found where an out-of-state defendant commits a tort that produces an injury in Florida. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005). "For example, allegations about an out-of-state defendant's telephonic, electronic, or

written communications into Florida are sufficient to trigger jurisdiction under the Long–Arm statute provided, however, that the cause of action arises from those communications." *Id.* (quotation omitted).

Here, the Court finds that Plaintiff has established a prima facie case of specific personal jurisdiction under section 48.193(1)(a)(2) because Plaintiff sufficiently alleges causes of action for negligent misrepresentation and fraud in the inducement arising out of statements made by Mr. Ballard to ripKurrent at a meeting in Florida—and through electronic communications into Florida. "To state a claim for fraud in the inducement, a plaintiff must allege (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation." *TransGlobal Airways Corp. v. JAF, LLC*, No. 06-22592-CIV, 2007 WL 9702180, at *10 (S.D. Fla. Nov. 13, 2007) (quoting *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003)). "[T]o state a cause of action for negligent misrepresentation, a plaintiff must allege (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Id.*

Plaintiff alleges that Mr. Ballard "willfully and knowingly"—or at least negligently—made "false representations" to ripKurrent concerning his expertise in sales and business development and his ability to obtain projects for ripKurrent in sports, entertainment, and hospitality. Compl. ¶¶ 27, 32. Mr. Dye's declaration specifies that Mr. Ballard made these representations during the parties' meeting in Boca Raton, Florida in October 2017. *See* Dye Decl. ¶ 12; *see also* Compl. ¶

4 (alleging that the tortious act of fraudulent inducement occurred "within Florida").  Plaintiff also alleges that Mr. Ballard induced ripKurrent to enter into the Consulting Agreement by misrepresenting that ripKurrent was "now the General Contractor of Technology for the Rockdome Project going forward."  *Id.* ¶¶ 4, 33.  Additionally, the Complaint asserts that ripKurrent reasonably relied on the misrepresentations and suffered damages as a result.  *Id.* ¶¶ 30, 35.  Taking Plaintiff's well-pleaded allegations as true and construing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged fraudulent inducement and negligent misrepresentation arising from communications within or into Florida.

In their Motion to Dismiss, Defendants did not contest the applicability of section 48.193(1)(a)(2) to Mr. Ballard or challenge whether Plaintiff sufficiently pleaded claims for fraudulent inducement and negligent misrepresentation.  *See generally* Mot.  Instead, for the first time in their Reply, Defendants argue that Plaintiff did not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) for the fraudulent inducement and negligent misrepresentation claims.  *See* Reply at 4.  However, "[a]rguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."  *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009).  Further, the Court disagrees with Defendants that Plaintiff's allegations do not satisfy Rule 9(b).  Plaintiff has alleged exactly what misleading statements were made, the timeframe (and for some statements the specific date) when they were made, and who made them.  *See* Compl. ¶¶ 6-11, 27-28, 32-33; *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) ("Plaintiffs are not expected to specify the exact time and the particular place of each factual omission or misrepresentation, but they must provide a sufficiently narrow time frame from which defendants could derive notice as to when the misrepresentations were made.") (quotation omitted).

"Because the Court finds the Florida long-arm statute confers personal jurisdiction over the tort claims for fraudulent inducement and negligent misrepresentation, the Court need not determine whether there is personal jurisdiction over the breach of contract claim . . . ." *TransGlobal Airways Corp.*, 2007 WL 9702180, at *13, n.10 (citation omitted); *see also Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1299 n.15 (S.D. Fla. 2009) ("The tort claims and the contract-related claims arise out of a common nucleus of operative facts.  Thus, the doctrine of 'pendent personal jurisdiction' comes into play.  Under this doctrine, as long as personal jurisdiction can be asserted over [defendant] for the tort claims, there would [ ] also be personal jurisdiction over the contract-related claims.").

### b.  Due Process

The Court must next determine whether the exercise of personal jurisdiction over Mr. Ballard comports with due process.  For this analysis, it is relevant that Plaintiff alleges fraudulent inducement, which is an intentional tort.  *See APR Energy, LLC v. Pakistan Power Res., LLC*, No. 3:08-CV-961-J-25MCR, 2009 WL 10670782, at *8 (M.D. Fla. May 21, 2009); *Banks v. Pub. Storage Mgmt., Inc.*, 585 So. 2d 476, 477 (Fla. 3d DCA 1991).  There are two applicable tests for determining whether purposeful availment has occurred in a case involving intentional torts.  *Louis Vuitton*, 736 F.3d at 1356.  First, under the effects test, a single tortious act can establish purposeful availment regardless of whether the defendant had other contacts with the forum state.  *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)).   This occurs when the tort was (1) intentional, (2) aimed at the forum state, and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.  *Id.*; *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) ("'[A] number of courts' have held that 'where a defendant's tort[i]ous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.'")

(quoting *New Lenox Industries v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007)); *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 856 (11th Cir. 2009) (applying effects test in case involving both breach of contract and intentional tort claims). The Court may also apply the traditional minimum contacts analysis. *Louis Vuitton*, 736 F. 3d at 1356.

Without opining on the merits of Plaintiff's fraudulent inducement claim, the Court finds that Plaintiff has alleged enough to satisfy the "effects" test for personal jurisdiction. Plaintiff has sufficiently alleged that Mr. Ballard: (1) committed an intentional tort—fraudulent inducement; (2) that was aimed at Plaintiff, a company in Florida; and (3) that caused Plaintiff harm (*i.e.*, loss of the money Plaintiff paid under the Consulting Agreement), which Mr. Ballard should have anticipated would be suffered in Florida. *See Exhibit Icons,* 609 F. Supp. 2d at 1299; *APR Energy, LLC*, 2009 WL 10670782, at *8; *Leedom Fin. Servs., LLC v. Bass*, No. 810-CV-689-T-26TBM, 2010 WL 2367106, at *3 (M.D. Fla. June 14, 2010); *HemispheRx Biopharma, Inc. v. Bioclones (Proprietary) Ltd.*, No. 04-10129-CIV, 2010 WL 11506446, at *3 (S.D. Fla. Apr. 7, 2010).

Mr. Ballard contends that because he was acting as Ballard IRA's representative when he made trips to Florida and communicated with Plaintiff, the exercise of personal jurisdiction over him does not comport with due process. However, "the corporate shield doctrine is inapplicable where the corporate officer commits intentional torts." *Louis Vuitton*, 736 F.3d at 1355; *see also Leedom*, 2010 WL 2367106, at *3 (finding that personal jurisdiction over defendant, a Georgia citizen, was appropriate even though defendant was acting as a representative of the corporation because the case fell "within an exception to the corporate shield doctrine for fraud and intentional misconduct.").[3]

---

[3]  Defendants argue that Georgia law, not Florida law, applies to the jurisdictional veil-piercing analysis. *See* Mot. at 11. Although Defendants are correct that generally the law of the state of incorporation or formation applies when determining alter ego liability, *see Sparton Elecs. Fla., Inc. v. Electropac Co.*, No. 8:05 CV 1495 T 30TBM, 2006 WL 2711842, at *2 (M.D. Fla. Sept. 21, 2006), this is not necessarily the

With respect to whether the exercise of personal jurisdiction over Mr. Ballard comports with traditional notions of fair play and substantial justice, the Court adopts the same reasoning applied to Ballard IRA.  The Court therefore concludes that the due process requirements for asserting jurisdiction over Mr. Ballard have been met.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [ECF No. 14] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of February, 2021.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

case when assessing an alter ego theory of jurisdiction.  *See Kernel Records Oy v. Mosley*, No. 09-21597, 2010 WL 2812565, at *6–7 (S.D. Fla. July 5, 2010) (finding that Florida law should apply to analysis of whether the court could exercise personal jurisdiction over Canadian corporation under an alter ego theory); *Comeens v. HM Operating, Inc.*, No. 6:14-CV-00521-JHE, 2014 WL 12650102, at *4 (N.D. Ala. Dec. 1, 2014) (indicating that substantive and procedural alter ego analyses "are separate and often treated differently").  In any event, under Georgia law, the corporate shield doctrine also does not protect a corporate officer from liability due to tortious activity.  *See Pac. Atl. Lines, Inc. v. Jah*, No. 1:09-CV-625-TCB, 2010 WL 11508348, at *4 (N.D. Ga. Feb. 10, 2010).